UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE QUIÑONES-FIGUEROA,

      Petitioner,

v.                        Case No.  8:12-CV-2230-T-27AEP
                                   8:08-CR-308-T-27AEP

UNITED STATES OF AMERICA,

      Respondent.
_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cv-D-1), Petitioner's Amended Motion under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cv-D-4), the Government's response (Cv-D-9), Petitioner's reply (Cv-D-10), Petitioner's Evidentiary Hearing Brief (Cv-D-23), and the United States of America's Supplemental Memorandum of Law in Opposition to Petitioner's Motion for Habeas Relief (Cv-D-22).

On June 23, 2008, Petitioner was charged in an Indictment with conspiracy to possess with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) (Count One), two counts of distribution of heroin in violation of U.S.C. §§ 841(a)(1), (a)(2) and (b)(1)(C) (Counts Two and Three), and possession with intent to distribute heroin in violation of U.S.C. §§ 841(a)(1), (b)(1)(C) (Count Four). Assistant Federal Public Defender (hereinafter "AFPD") Howard

Anderson was appointed to represent Petitioner.

Petitioner was scheduled to enter a guilty plea on October 29, 2008 and November 14, 2008. Both times he declared that he did not want to plead guilty and wanted to go to trial. On the latter date, Petitioner advised the Magistrate Judge that he was attempting to retain counsel. The Magistrate Judge advised Petitioner that the trial in the case was set to commence on the following Monday and no other attorney had sought to appear on his behalf. Also on November 14, 2008, the Government filed a Notice of Enhancement pursuant to 21 U.S.C. § 851. This increased Petitioner's mandatory minimum penalty as to Count One from five years to 10 years incarceration.

The trial was scheduled to commence on November 17, 2008. At that time AFPD Anderson advised District Judge James S. Whittemore that Petitioner wanted to seek other counsel because he was not satisfied with Anderson's representation of him. Judge Whittemore gave Petitioner the option of representing himself and Petitioner declined. Petitioner complained that Anderson tried to set up an interview between Petitioner and the agents without Petitioner's consent. Government counsel orally advised the maximum penalty for Count One was 40 years, Counts Two through Four 20 years and that there was a mandatory minimum of 10 years because of Petitioner's prior criminal history. Petitioner confirmed that he knew he was "facing between 10 and 40 years...." (November 17, 2008

2

Transcript, pp. 9, 12-13.)

Judge Whittemore held an in camera sidebar with Petitioner and Anderson. Petitioner complained that there had not been sufficient time to prepare between the time he was arrested and November 2008. He said his family had contacted attorneys but that he needed 20 days to retain one. He said he felt pressured and that his rights were violated when Anderson made an appointment with the agents to visit him at the prison without his consent. Anderson countered that the meeting was not made without Petitioner's consent. Anderson explained he went to jail and spoke with Petitioner while agents waited. When Anderson determined that Petitioner would not talk to the agents, he sent the agents away.

Judge Whittemore found no conflict of interest or irreconcilable differences to discharge Anderson. He denied Petitioner's request to postpone trial. However, the trial did not go forward at the time due to a lack of jurors.

The trial was rescheduled before this Court for January 12, 2009. On the afternoon of jury selection, Petitioner appeared with a new attorney, John Bergendahl. Mr. Bergendahl requested that he be permitted to represent Defendant and also requested a continuance of the trial. The Court advised Mr. Bergendahl that the trial would not be continued and, as Bergendahl was not prepared to go forward with the trial, denied substitution of counsel. Petitioner then pled straight up with Anderson continuing

to represent him.  (Cr-D-82.)

Petitioner later retained attorney John Bergendahl to represent him at sentencing and on appeal.  On August 13, 2009, Petitioner appeared for sentencing.  Mr. Bergendahl argued that Petitioner was not a career offender because he did not have two prior convictions under the language of the guidelines.  The Court found that the prior sentences from Puerto Rico are counted separately and, as a result, Petitioner was a career offender.  The Court sentenced Petitioner to a term of imprisonment of 328 months.

Petitioner appealed.  On March 15, 2011, the Eleventh Circuit affirmed Petitioner's sentence.  United States v. Quinones-Figueroa, 417 Fed. App'x 893 (11th Cir.)(per curiam), cert. denied, 132 S.Ct. 215 (2011).

Petitioner timely filed his original § 2255 motion.  He filed an amended motion on October 30, 2012.  Petitioner raises multiple claims of ineffective assistance of counsel, including the following: (1) Petitioner's plea was not knowingly and voluntarily entered because his counsel advised him he would receive a sentence of no more than 10 years; (2) counsel failed to challenge the charges when the Government did not show a conspiracy; (3) counsel failed to advise Petitioner of the "total reality" of his sentencing exposure as to the career offender enhancement.  He also claims sentencing manipulation and sentencing entrapment.

By order dated March 26, 2013, the Court found that an

4

evidentiary hearing regarding claims (1) and (3) was necessary to determine whether Petitioner's counsel rendered constitutionally ineffective assistance and whether such assistance affected the actions of the plea process.   Attorney Tim Bower Rodriguez was appointed to represent Petitioner at the hearing.

The Court held an evidentiary hearing on May 6, 2013. Petitioner testified on his own behalf.   The Government presented the testimony of Howard Anderson.

### TESTIMONY AT THE HEARING

Petitioner testified that he could not remember if Anderson ever showed him a written plea agreement, but he recalled the first offer was for a sentence between five and ten years.   Petitioner further recalled that Anderson told him at that time that the minimum sentence was 71 months because he believed Petitioner only had one prior offense.

He admitted that Anderson later told him that his two drug convictions from Puerto Rico made him eligible for a career offender enhancement.   Petitioner testified that he argued with Anderson and told him the two Puerto Rico cases were "unified." Petitioner argued to Anderson that there was an agreement in Puerto Rico between the Judge and the prosecutor and it should be considered.   Petitioner admitted that Anderson told him perhaps that was the agreement between the parties in Puerto Rico but that now he was charged in Tampa and that the two convictions would be

counted separately under the career enhancement guideline. Petitioner asked Anderson to request a hearing regarding the career offender issues on two occasions. The first time Anderson told him it could not be done. When Petitioner asked Anderson a second time, Anderson told him it was too late. Petitioner did not remember Anderson showing him the § 851 notice of enhanced penalties filed by the Government.

Petitioner complained that Anderson had him brought to court for a guilty plea hearing without advising him ahead of time. Petitioner said he told the interpreter at that time he "would not sign" because he had not worked out an agreement with Anderson. Petitioner testified that Anderson told him after the hearing that they needed to prepare for trial and Petitioner said, "fine." Petitioner complained that he asked Anderson for the laboratory reports so he could study them and that Anderson said he was not accustomed to giving evidence to the clients. The second time he asked for them, Anderson said he did not have the reports on him but that the percentage was very high. Petitioner complained that while Anderson told him the reports were positive, the Government told him the reports were negative.

Petitioner also complained of a visit Anderson set up at the jail between Petitioner, Anderson, and the agents. Petitioner complained Anderson set up the meeting without Petitioner's permission.

6

Petitioner insisted that at all times Anderson told him the maximum sentence he faced if he pled guilty was 10 years. Petitioner testified that he pled guilty on January 12, 2009, because Bergendahl was not prepared for trial and Petitioner did not feel he could go forward with Anderson.  Petitioner said he thought the 10-year offer was still on the table at the time he pled guilty.  He testified that had he known he was going to get 30 years, he would have preferred to go to trial as he considers 30 years to be a life sentence.  With regard to his guilty plea, Petitioner admitted he knew it was serious and that he was under oath and to tell the truth.

AFPD Howard Anderson testified that he had a total of 13 years experience working as a Public Defender for the State and Federal systems, and four years experience as an Assistant State Attorney.  He explained that Petitioner did not speak English but understood it and that Anderson used a Spanish interpreter at every meeting.  He estimated he met with Petitioner 15 to 18 times.

According to Anderson, he reviewed the discovery with Petitioner.  He asked about his prior criminal history and Petitioner told him he had one prior conviction.  Information Anderson received from the Government showed that Petitioner had one prior conviction.  Anderson, however, contacted attorney Odaz, who had represented Petitioner in the past, and learned that Petitioner had two prior drug convictions in Puerto Rico and a New

York burglary conviction which Anderson worried might be considered a violent crime.

Anderson testified that he discussed the career offender enhancement with Petitioner on November 4, 2008. Petitioner denied the second conviction. Anderson obtained a copy of the judgments and showed them to Petitioner. Petitioner argued that they were one offense. Anderson told him they would be counted as two separate offenses and that if Petitioner were given the career offender enhancement, he would likely be a level 37 and a criminal history of VI. He estimated that, if Petitioner pled guilty and received three levels for acceptance of responsibility, his range would be 262 to 293 months.[1] Had the Government not filed the section 851 notice of enhancement, the guideline range would have been 210 to 262 months.

Anderson recalled that the Government's original offer was to have Petitioner plea to Count One of the Indictment which, at that time, carried a five year mandatory minimum sentence and a maximum term of imprisonment of 40 years. He explained that his practice is to review the plea agreement with the client page by page. He explained that he highlights areas that are beneficial to the client. In Petitioner's case, it was those paragraphs relating to

---

[1] A total offense level 34 and a criminal history VI is a guideline range of 262 to 327 months. It is unclear whether Anderson misspoke at the hearing as neither party asked any follow up regarding the estimated range he told Petitioner.

a low end of the guideline range, acceptance of responsibility, cooperation, and the fact that no § 851 had been filed. He explains the provision relating to appellate rights and reviews the factual basis. Anderson said review of the plea agreement usually takes about 45 minutes.

Anderson explained that he told Petitioner he believed the Government had a strong case and that Petitioner would be convicted, and he thought the offer was fair. At this point, the Government had not yet filed the notice of enhancement pursuant to § 851. Anderson said Petitioner contemplated accepting the offer.

Anderson explained that he set a hearing for the first guilty plea to place on the record that Petitioner did not want to plead. According to Anderson, around that time Petitioner wanted Odaz to take the case but Odaz would not accept it. On November 14, 2008, still Petitioner did not want to plead guilty and wanted to retain counsel. Anderson said attorney Bergendahl was aware of Petitioner's interest in retaining him for at least six weeks prior to Petitioner's plea.

Anderson testified that after the Government filed the § 851 notice of enhancement, he explained that he met with Petitioner on December 11, 2008 and December 29, 2008 and on one or both of those days he explained to Petitioner the significance of it. Anderson recalled that Petitioner's position was retain counsel and that the Government could file whatever it wanted.

9

Anderson denied ever telling Petitioner he would get a sentence of no more than 10 years. He explained that it is his practice to review the guidelines with the client and tell them his guidelines calculations are an estimate. Anderson said he has never told a client in a federal case he would get a specific sentence. Anderson testified he would have never told Petitioner the maximum sentence he would receive would be 10 years because after the 851 notice the mandatory minimum became 10 years and the only way Petitioner could have received that was to cooperate and hope that the Government would file a motion pursuant to 5K or Rule 35.

Anderson testified that he was prepared to proceed to trial on January 12, 2009, but that Petitioner decided to plead guilty. Anderson advised him to let him get a plea agreement and Petitioner told Anderson he wanted to plead open. Anderson told him if he pled open that he would have to plead to all four counts.

## COURT'S CREDIBILITY FINDINGS

After hearing the testimony of Petitioner and AFPD Anderson, observing their demeanor, and taking into account the witnesses' interests in the outcome of these proceedings, the Court finds the Petitioner's testimony that Anderson told him he would receive a maximum sentence of 10 years is not credible. The Court credits Petitioner's testimony that Anderson told him that he was a career offender. The Court fully credits the testimony of Anderson.

Petitioner's testimony that Anderson told him he would not get a sentence higher than 10 years if he pled is not supported in the record.   Significantly, on November 17, 2008, the Government advised that the maximum penalties were 40 years as to Count One, and 20 years as to Counts Two and Three and that there was a 10-year mandatory minimum due to Petitioner's prior criminal history. Petitioner recognized that, "I'm facing between 10 and 40 years...."

Petitioner's statements made under oath at the guilty plea colloquy on January 12, 2009, also contradict his testimony that Anderson told him he would be sentenced to no more than 10 years. At the guilty plea hearing, the Court asked Petitioner whether he had had enough time to talk with his lawyers about the case and whether he was satisfied with the way they had represented him, to which Petitioner responded in the affirmative.   (Cr-D-82, p. 12.) The Court advised Petitioner of the maximum penalties and the mandatory minimum sentence of 10 years as to Count One.   (Id. at p. 13.)   Petitioner admitted that his counsel had spoken to him about the sentencing guidelines.   (Id. at 13-14.)   Then the following dialogue took place:

> Q.   Now, has anyone threatened you, or done anything that you consider to be wrong or unfair, that has forced you to plead guilty?
>
> A.   No.
>
> Q.   Is your plea your own independent decision made by you freely and voluntarily, and not because of any

threats or promises or force, but that you're doing so voluntarily; is this true?

A.   Yes, sir.

Q.   Has anyone told you that you would receive a light sentence if you entered a guilty plea?

A.   (Shaking head negatively) No, sir.

Q.   So your plea is without any promise from me as to what sentence would be imposed?

A.   Yeah.

Q.   Do you have any agreement, promise or understanding with the prosecuting attorney, any Government agent, or anybody else about this case, other than what we have talked about here this afternoon?

A.   No, sir.

The Court:   And, Mr. Anderson, as counsel for the defendant, do you assure the Court that as far as you know, no promises, assurances or representation have been made to you or to your client with regard to the disposition of this case that has not been put on the record this afternoon?

Mr. Anderson:   I can make, uh, to the Court that I know of no assurances whatsoever, and this is a complete open plea without any promises made to him.

(Id. at pp. 20-21.)

On the other hand, AFPD Anderson appeared completely credible at the hearing. Anderson is an experienced attorney who has been practicing law for approximately 17 years. Thirteen of those years Anderson has practiced as a State or Federal Public Defender.

There is simply no credible evidence that Anderson told

12

Petitioner his maximum sentence would be 10 years.  Anderson was unequivocal in his testimony that he never told Petitioner he would receive a maximum sentence of 10 years and that he has never told any federal client that he would receive a specific sentence. Given the statutory mandatory minimum, Petitioner's criminal history, and the fact that Petitioner was unwilling to cooperate, it is unbelievable that Anderson would tell Petitioner he would be sentenced to a term of incarceration of no more than 10 years.

Nor is there any credible evidence that Anderson failed to advise Petitioner about the § 851 notice of enhancement.  Anderson credibly testified that he discussed the § 851 with Petitioner on at least one occasion and that he may have discussed it with him on three occasions.  While he admitted his contemporaneous notes, which were not entered into evidence, did not specifically include reference by name to the § 851 notice, he testified that his notes led him to believe he discussed the notice on either December 11, 2008, December 29, 2008, or both dates.

As for whether Petitioner was advised of the career offender enhancement, Petitioner and Anderson both testified that Anderson advised Petitioner that he qualified for the career offender enhancement in light of his prior convictions.  The fact that Anderson discussed the career offender enhancement was further supported by his notes for November 4, 2008.

Having assessed the credibility of the witnesses, the Court

13

now turns to the issues presented in Petitioner's Motion.

## INEFFECTIVE ASSISTANCE OF COUNSEL

As previously indicated, Petitioner raises various claims of ineffective assistance of counsel. Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218

14

F.3d 1305, 1313-14 (11th Cir. 2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694. A petitioner must show a "substantial, not just

conceivable, likelihood of a different result." <u>Cullen v.
Pinholster</u>, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation
omitted).

**1)   Ineffective Assistance of Counsel Regarding Guilty Plea**

Petitioner claims that Anderson was ineffective in failing to
accept the original plea offer.  He further argues that his guilty
plea was not knowingly and voluntarily entered because Anderson
incorrectly advised him that he would receive a sentence of no more
than 10 years.

First, Petitioner's claim that Anderson rendered ineffective
assistance of counsel in failing to accept the original plea offer
is completely without merit.  It is clear from the evidence that
Anderson reviewed the written plea agreement with Petitioner, told
him it was a fair offer, and set up two guilty plea hearings.  It
is further clear that Petitioner refused to plead guilty on both
occasions and that those decisions were of his own accord.

Second, the Court finds that Anderson did not advise
Petitioner that he would be sentenced to a maximum term of
imprisonment of 10 years.  Rather, after the Government filed the
§ 851 notice, Anderson advised Petitioner that he was subject to a
mandatory minimum sentence of incarceration of 10 years and a
maximum of 40 years.  He further advised Petitioner that the only
way he could get a sentence of less than five years was if
Petitioner cooperated with law enforcement and his cooperation

resulted in the Government filing a 5K motion or a Rule 35 motion on Petitioner's behalf.   He further advised Petitioner that the career offender enhancement would more than double the applicable guideline range.   When Petitioner ultimately decided to enter a straight up guilty plea on January 12, 2009, Petitioner rejected Anderson's advice that Petitioner allow Anderson to obtain a written plea agreement.

Contrary to his allegations, the record shows that Petitioner knowingly and voluntarily entered his guilty plea.  "For a guilty plea to be entered knowingly and intelligently, 'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available.'"  <u>Finch v. Vaughan</u>, 67 F.3d 909, 914 (11th Cir. 1995) (quoting <u>Stano v. Dugger</u>, 921 F.2d 1125, 1142 (11th Cir. 1991)).

The plea colloquy shows that Petitioner understood the nature of the charges against him and the possible consequences resulting from entering a guilty plea, including the possible sentence he faced.   He stated that he was satisfied with his counsel's representation, that he was guilty of the charges, that it was his decision to enter a guilty plea, and that no one had made him any promises in exchange for his plea of guilty.   As such, Petitioner

is not entitled to relief as to this claim.

**2)** **Ineffective Assistance of Counsel in Failing to Raise Argument Regarding Conspiracy**

Petitioner next contends he was wrongly convicted.  He claims that the Indictment did not charge a conspiracy and the Government failed to prove a conspiracy beyond a reasonable doubt.  Petitioner specifically argues that he and Wendell Rivera, the confidential informant, had a buyer-seller relationship.  Finally, he claims Anderson was ineffective in failing to raise this issue.

First of all, the Indictment charged Petitioner with just one count of conspiracy (Count One).  Counts Two and Three charged distribution of heroin and Count Four charged possession with the intent to distribute heroin.  As such, his conspiracy argument does not apply to Counts Two through Four.

As to Count One, the Indictment charged that from January 2008 through April 16, 2008, Petitioner "did combine, conspire and agree with other persons who are known and unknown to the grand jury to possess with the intent to distribute and distribute 100 grams" of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). (Cr-D-1.)  An indictment sufficiently charges a section 846 conspiracy if it alleges the following: (1) a conspiracy to distribute drugs; (2) the time during which the conspiracy is alleged to have been operative; and (3) the statute allegedly violated.  United States v. Benefield, 874 F.2d 1503, 1506 (11th Cir. 1989).  Here, the Indictment sufficiently charged the crime of

conspiracy to possess with the intent to distribute and to distribute heroin. As such, Petitioner fails to show any prejudice resulting from Anderson's failure to file a pretrial motion attacking the Indictment.

Furthermore, at his guilty plea, Petitioner agreed to the Government's proffer of facts that it would expect to prove had the case gone to trial. (Cr-D-82, p. 19.) These facts included that Petitioner "had on more than one occasion told the CI that he was waiting for his supplier to bring him more heroin so he could again do business with the defendant." (Id. at pp. 17-18.) Petitioner further agreed with the Government's statement that "[t]he nature of heroin is that it's produced outside of the country, it's chemically processed outside of the country by other people, and the defendant was just the end person in the distribution chain for that." (Id. at p. 18.)

The Court also went through each element of conspiracy with Petitioner. Petitioner agreed that he had come to an agreement with someone else to do an unlawful act, he knew it was against the law but did it willfully, and that the purpose of the plan was to possess with the intent to distribute 100 grams or more of heroin. (Id. at p. 19.)

Given the foregoing, Petitioner has not demonstrated prejudice resulting from his counsel's failure to raise the issue of a buyer/seller relationship.

19

### 3)   Violation of Due Process and Fair Notice as to Career Offender Enhancement

At the hearing, Petitioner clarified his claim that his due process rights were violated because he was not placed on notice of the "total reality" of this sentence exposure before pleading guilty.  Petitioner explained that he was not given fair notice of the career offender enhancement prior to entering a guilty plea.

The law is clear in the Eleventh Circuit that the § 851 notice requirements do not apply when the Government seeks to use prior convictions as the basis for a career offender enhancement, "so long as the enhanced sentence still falls within the permissible statutory range." United States v. Kicklighter, 346 Fed. Appx. 516 (11th Cir. 2010) (per curiam), citing Young v. United States, 936 F.2d 533, 536 (11th Cir. 1991); accord United States v. McElroy, 180 Fed. Appx. 82, 85 (11th Cir. 2006).   Furthermore, the Government neither has to allege in the indictment nor prove by a reasonable doubt that Petitioner had prior convictions for the Court to use them for purposes of enhancing a sentence. Almendarez-Torres v. United States, 523 U.S. 224 (1998).   Here, Petitioner's sentence of 328 months falls within the permissible statutory range.   Additionally, the Eleventh Circuit ruled this Court properly sentenced Petitioner as a career offender. Quinones-Figueroa, 417 Fed. Appx at 894.

To the extent that Petitioner claims that Anderson failed to advise him he would be considered a career offender, such a claim

is undermined by Petitioner's own testimony as well as that of Anderson.   Petitioner candidly and repeatedly admitted that Anderson told Petitioner he qualified for the career offender enhancement as he had two prior felony drug convictions.   It is undisputed that Petitioner disagreed with Anderson's opinion and that Anderson did not request a pre-plea hearing to determine the application of the career offender enhancement.   Petitioner, however, has not shown any prejudice resulting from Anderson's failure to do so.   In this regard, Petitioner was not entitled to a pre-plea determination as it relates to his career offender status.

It is clear Anderson advised Petitioner of the likelihood of the sentencing enhancement based on his two prior drug convictions and the impact the enhancement would have on his guideline range. Petitioner therefore is not entitled to relief as to this claim.

**4)    Sentencing Manipulation and Entrapment**

Petitioner next claims prosecutorial manipulation and entrapment as a result of failing to arrest Petitioner after the commission of the first offense.   He claims he should be held responsible for less than 100 grams of heroin rather than 1.098 kilograms of heroin.

Sentencing entrapment, which focuses on the defendant's conduct and predisposition to commit an offense, is not a valid defense in the Eleventh Circuit.   <u>United States v. Sanchez</u>, 138

F.3d 1410, 1414 (11th Cir. 1998); United States v. Ciszkowski, 492
F.3d 1264, 1270 (11th Cir. 2007).  Sentencing manipulation, which
involves the government's conduct in continuing to pursue
controlled buys, can be used to reduce a defendant's sentence but
not to reverse a conviction.  Id.  To prevail on a sentencing
manipulation claim, the defendant must show the government engaged
in extraordinary misconduct.  Id. at 1271.

Here, there were two undercover buys on March 4, 2008 and
March 15, 2008.  On April 16, 2008, the confidential informant was
to go to Petitioner's home to retrieve 50 grams of heroin in a pool
table.  It was on this day law enforcement executed a search
warrant and found the drugs.  At sentencing, Petitioner was held
accountable for at least 100 grams but less than 400 grams of
heroin and not over 1 kilogram as Petitioner claims.

The Eleventh Circuit has held that the government did not
engage in extraordinary conduct in cases similar to Petitioner's
case.  In United States v. Govan, 293 F.3d 1248 (11th Cir. 2002)
(per curiam), the district court determined the government had
engaged in sentencing manipulation when law enforcement purchased
crack cocaine from the defendant on four occasions and departed
downward as to the defendant's criminal history.  The Eleventh
Circuit, in vacating the sentence and remanding the case for
resentencing, explained as follow:

> In the present case, the district court concluded
> there was sentence manipulation because the government

aggregated separate quantities of crack cocaine by buying
small quantities on four separate occasions, instead of
stopping and arresting Govan after the first buy.  But
these circumstances are indistinguishable in principle
from those in _Sanchez_.  Making four purchases instead of
just one in this case is no more manipulative than the
government in _Sanchez_ setting in motion a fictitious
sting operation involving a large quantity of drugs
instead of a small one.  In this case the district court
was also troubled by the government's admission that
presenting four transactions in one case makes it easier
to obtain a conviction, but there is nothing wrong with
the government attempting to strengthen its case for
conviction.  Because the district court should not have
departed downward in the criminal history category, we
remand with instructions for it to re-sentence without
departure.

_Govan_, 293 F.3d at 1251.  Similarly, in _United States v. Denson_,
387 Fed. Appx. 926, 928 (11th Cir. 2010) (per curiam), the court
found there was no sentencing manipulation where a confidential
source bought crack cocaine from the defendant on three occasions,
each time buying increasing amounts.

Given the law of the Eleventh Circuit that successive buys on
the part of the government is not sufficient conduct for a finding
of sentencing manipulation, Petitioner is not entitled to relief as
to this claim.

The Court notes that Petitioner's counsel argued on appeal
that Petitioner's sentence was unreasonable.  In support of this
contention, he argued that this Court failed to consider law
enforcement's sentencing manipulation.  Petitioner's appellate
counsel argued on appeal that:

Another factor pointing to the overall unreasonableness of the sentence imposed in this case was the impact of law enforcement's delay in arresting Mr. Quinones-Figueroa. Simply put, instead of making an arrest based upon probable cause established on the basis of the initial information received from the cooperating witness, Wendell Rivera, and the first controlled buy of twenty (20) grams of heroin, they encouraged Rivera to keep trying to make additional buys. Rivera's subsequent efforts resulted in more transactions that pushed the amount of substance involved to one hundred (100) grams. For sentencing purposes, the results were catastrophic.

(Initial Brief of Appellant, pp. 31-32, footnote omitted.)

The Eleventh Circuit, in addressing the argument, found "[h]e also argues that his sentence was unreasonable, but we have reviewed the record and find his argument to be without merit." Quinones-Figueroa, 417 Fed. Appx. at 894. As Petitioner's counsel raised the issue of sentencing manipulation on appeal, Petitioner cannot show prejudice as a result of his attorney's conduct relating to this issue.

It is therefore ORDERED that:

1)   Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv-D-4) is DENIED.

2)   Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv-D-1) is DENIED as moot.

3)   The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability ("COA"). A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this __15th__ day of May, 2013.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE